Good morning, Judge Geringer, Judge Floyd, and Judge Quattlebaum. May it please the court. I am Jay Hurst and I'm here on behalf of defendant-appellant Christian Allmendinger, who is serving a 540-month sentence for mail frauds and conspiracy to commit mail frauds that were convicted by a jury. This matter involves a re-sentencing hearing, however, that turned out exactly like the original sentencing, nearly a decade before, despite three fewer convictions and despite the district court recognizing that a different defendant was before the court. With a hat-tip to the guidelines and weighing that the offender's prior punishment and positive changes were not relevant enough to overcome the original decision, the district court clarified that neither a changed offense nor a changed offender would change the ultimate The decision turns on a couple of technical and perhaps hyper-technical legal distinctions, starting with procedural versus substantive reasonableness. This classification is most important here because it affects the standard of review, whether there is more of a legal analysis in the de novo sense as to failure to consider, or a more deferential abuse of discretion standard used more toward factual considerations. In this case, it's a significant overlap between the two because the court went on record as saying it did consider the post-offense rehabilitation of Mr. Allmendinger, but at the same time said that it did not consider that rehabilitation to merit mitigation against the original decision. So, with the law of the circuit being basically unclear on this point, there's no clear delineation between substantive and procedural reasonableness in this case. We would ask, therefore, that the standard applied be looking to the legal standard of whether the district court hits post-offense rehabilitation and considered it appropriately. The how of how a sentence is rendered is the procedural side. Whether after the procedure is correct, the court has justified that final sentence, that's substantive. But to get to there, you first have to consider whether the district court, in this case, followed an appropriate procedure in considering post-offense rehabilitation. Now, all courts have occasionally had trouble trying to categorize this reasonableness. There's not going to be a bright line test or distinction that the court could pull out of this case, in fact, I don't think, just because it is more in line with a Venn diagram than it is two blocks side by side. There is an approach where you look at what the district court said and you look at the sentencing hearing transcript and there is an analysis that, yes, I do understand that this is a different person before the court. So, the judge does recognize to some degree that there's a change. The problem is the judge in the sentencing court did not recognize that that change was statutorily required to be weighed up against and to have some mitigation value. That's why in our sentencing papers at the trial court level, and this is at JA 164, I believe, we discussed North Carolina v. Pierce and the legal concept of vindictive sentencing. Now, we're not saying that... Mr. Hurst, if I could stop you there. I'm trying to make sure I understand what your argument requires the district court to do. The district court, as you know, acknowledged that spending time in prison had changed him and looked at all the factors and decided to impose the same sentence. You just said something that I want to make sure I understand. It sounds like you say that if that fact is a mitigation. So, are you saying that the district court would be obligated to reduce the sentence if there's an acknowledgment that he has changed some? It sounds like you're saying that acknowledgment required a reduction. If that's your position, I just want to make sure I understand it. In this particular case with these particular facts, I do believe that is what the district court would have to wind up doing to avoid rising to a quote-unquote vindictive sentence for North Carolina v. Pierce. And it's not that the vindictiveness is in our normal usage. You know, there wasn't any meanness or mean-spiritedness, but the idea is that with a different set of offenses, there weren't even the same number of offenses, criminal conduct was different, and the offender himself was different from the person who appeared and, in fact, had set himself up to flee before he came back to court 10 years ago. That's not the same person there now. So, in a balancing test, those factors did not exist before. They do now, and it would be impossible to consider them under the statute without them having some kind of impact. Mr. Hurst, to follow up on Judge Quattlebaum's question, the Supreme Court in Pepper said the court may consider post-sentencing rehabilitation. It seems to me all he has to do is to consider it. He doesn't have to accept it. Would you agree with that? I would agree that the district court would be required to consider it, but I think that's probably poorly phrased by the Supreme Court, quite frankly. It's a risk of seeming arrogant, but the idea that an offender can change, but a district court need only may be considerate at a future sentencing, that doesn't comport with the statute of 3553A1, which says that the offender at that sentencing must be considered. So, to the extent that we're talking about post-offense rehabilitation having fundamentally altered one of the statutory sentencing considerations, that's what I'm getting at. As far as a judge looking and saying, okay, well, he taught GED courses, and he also helped in the library, that kind of rehabilitative efforts, sure, the court can look at that and say that's fine, but that's not enough. But where there's a fundamental change in the person before the statute, the judge has to consider it. And what do you suggest is the fundamental change here? The change in the defendant, in Mr. Allmendinger. And how is that proven in the record? Because it's a fundamental change, go ahead. Well, it's acknowledged by the court after the sentencing discussions, where we discussed that he was originally assigned because of and then while he was in the facilities, he got into GED tutoring, he worked his way down to where he is now at a medium security facility. Through all this process, when he allocated and when he spoke to the sentencing court, the sentencing court itself said that this was clearly not the that it was clearly a different person before the court. So besides the evidence... You think that's evidence that it's fundamental change? That there's fundamental change in the humility of the person? Yes, I do believe that the district court recognized that it's fundamental change in the person. Well, yeah, I think, okay, go ahead. Certainly, if I'm unclear, I'll try to fix that. My apologies. Really, what it boils down to is how much discretion does a court have, a sentencing court at the district court level? The answer is almost limitless if they explain correctly, as was pointed out. However, where they explain correctly that they chose not to include a habilitation that changed the offender that the district court acknowledged was a changed offender, that becomes a procedural flaw in how the calculus is done. So that's the position we're on. And that feeds us into what I know is really a throwaway argument because of the Supreme Court holding. But the idea of the sentencing court finding these facts despite jury convictions by a preponderance of evidence instead of beyond a reasonable doubt. So there's an issue there that has to be addressed by the Supreme Court if it's ever to be addressed. But that issue also feeds in and illustrates how the sentencing didn't change no matter what the jury did. And it calls into question not just the jury's work and the value of the jury, whether it's a bulwark, but whether the original sentencing and appellate counsel actually had made any mistakes at all. This is a re-sentencing from a 2255, in fact, where the issue of money laundering convictions was not raised on appeal with the idea that the same sentence would be rendered in the trial court whether there were money laundering convictions or not. The ineffective assistance of counsel was found. It was sent back to the district court. Three money laundering charges disappeared and then nothing more changed. So from that, we're left with the opinion that, or with the apparent observation that juries have only a limited relevance in our system. And I'm not sure as a policy matter, let alone from a Sixth Amendment standpoint, that's appropriate. Unless the panel has any questions for me, I would reserve the balance of my time and leave the government to speak. Thank you, Mr. Hurst. Ms. Agar? Good morning, Your Honors, and may it please the court. Federal sentencing law, as this court knows, is almost entirely permissive, and even a cursory examination of the sentencing transcript shows that the district court has not been able to fully consider and assess the defendant's arguments before rejecting them. The district court's decision to reimpose the same 45-year sentence on remand should be affirmed. And I'll begin with where I believe Mr. Hurst was going towards the end of his argument. I understood him to be saying, in response to Your Honor's question, that a court must consider evidence of U.S.C. 3553A. And I agree with Judge Floyd that Pepper authorizes a court the opportunity to consider it. A district court may consider it. But here, even if we accept Mr. Hurst's line of argument that a court must consider it, we have evidence before us that the district court did, in fact, consider the limited evidence of Mr. Allmendinger's post-sentencing rehabilitation. And that limited evidence was counsel's proffer that Mr. Allmendinger had moved from a penitentiary to a medium facility within the Bureau of Prisons. He also represented that Mr. Allmendinger had participated in GED tutoring. And third, Mr. Hurst represented that the defendant was, in fact, a changed man as a result of his current time in prison. And none of that is, one would hope that Mr. Allmendinger was a different man after spending seven odd years in prison. But the court did consider these factors on JA 223 and 226. The court says, I'm considering it and I'm rejecting it. And the court, a district court, is authorized to do so under Gaul. A district court may apply whatever way it wishes, 23553A factors. In this instance, the court was very clear that Mr. Allmendinger's conduct was abhorrent and it weighed very heavily the seriousness of the offense. As this court noted in 2013, his crimes, his mail fraud conspiracy caused an unthinkable scope of financial ruin to hundreds of people. Victim impact testimony taken live at the first sentencing and then provided in two inches of victim impact statements before the district court upon resentencing established the crushing effect that this conspiracy had on many people's lives. That, in addition to what Mr. Hurst has alluded to, Mr. Allmendinger's failure to accept responsibility, his efforts to squirrel away cash, to flee before trial, all of that was simply outweighed by the district court or it outweighed in the district court's mind any post-sentencing rehabilitation evidence that Mr. Allmendinger presented. And that is the court's prerogative and that is lawful under the law. For that reason, your honors, I will say that the evidence before this court is that Mr. Allmendinger's sentence was procedurally and substantively reasonable. As I indicated, the court engaged in banter extensively with Mr. Hurst about the factors it was considering, what Mr. Hurst was arguing, whether it was a departure, whether it was a variance, and went on to really provide a very thorough explanation as to why it was reimposing the same sentence. A below guideline sentence, I'll add. In this instance, Mr. Allmendinger's sentence was from 1,700 months to 780 months. It's still an enormous sentence and the court imposed a sentence below the 780 months to a sentence of 45 years. And that is a procedurally reasonable sentence. As to substantively reasonableness, the substantive reasonableness of his sentence, your honors, I understood Mr. Hurst in his brief to be arguing that the sentence was substantively unreasonable due to its length. That was discounted by another panel of this court in 2013, that a 45-year sentence for a crime of this nature is not outside of the realm of possibility for an offense like this with an offender like this under all of the 3553A factors. So unless the court has some questions for me, I'm happy to rest on my brief as well. I have a question. There's a reference, I believe I'm correct about this, that the court found, I think the reference to that these, the victims were vulnerable. You remember that? Yes, sir, your honor. What was the basis of finding that they were vulnerable? At the initial sentencing, there was live testimony and much of it was supported in the victim impact statements. Well, let me start there and then I'll back up. The victims who testified, many of whom were were elderly, they were near retirement age and they were on their way to retirement and A&O had essentially decimated their retirement accounts. Also during trial, the court heard evidence that Allmendinger and his co-conspirators deliberately marketed their product as suitable for retirement funds. And at that time in the large part of the victims of A&O were folks on the cusp of retirement who at the last minute put their funds or their teenage kids college funds into A&O and then lost it all. And so there has never been any challenge to the vulnerability of these victims due to age and in some instances disability. But that also added, your honor, to the seriousness of the a terrible situation before the court at the time and in post sentence. So with that, I rest on my brief and I ask that you please affirm the conviction and sentence of Mr. Allmendinger again. Thank you. Thank you. Mr. Hurst, you have some time reserved. Yes, I would add just a few things. The first one would be that under 18 U.S. Code 3661, there is a mandate that sentencing courts consider evidence put before them that is of sufficient reliability and trustworthiness. So to the extent that courts are being distinguished between what they may consider and must consider, if there's a non-frivolous argument, courts must consider that to the trial court. To the extent that we put on evidence that the court itself found was a change of character, closing out the hearing, the trial court said that I do accept he is somewhat remorseful now. This is at JA232. So he's more remorseful now than he was eight years ago. He's certainly not the same person who structured a packed his car, raided his wife's account, was ready to flee. So the trial court itself distinguished this is a different human being than the one that was before the court the first time. Mr. Hurst, did the court address your argument that an early release would perhaps facilitate restitution? To my knowledge, we did not go into that because the holding was that the punishment, deterrence, and incapacitation factors were the outweighing factors. I thought you argued that. That was one of your arguments. Yes, that was in the sentencing papers. And it's certainly something I raised at the hearing, if I recall correctly, but it's not something we discussed at length. So you concede that the court didn't have to consider that? No, I did. No, I won't concede that. I would say, in fact, the court did have to consider that to the extent that I had missed that issue to this point. That's on me, honestly. Oh, I asked you about it. You said, well, we didn't push that. But that's not frivolous, is it? That's not frivolous. It's all about, this case is about people, as counsel just said very, very, very aptly. This is about people losing money. So you put forth one that says, wait a minute, you want me to help get their money back, getting out earlier might help do that. That's not frivolous. I mean, so otherwise, you don't think that the court needed to address that? Well, I would. It's one of two answers to that. And I hate to put myself in the mind of the district court, but. No, I'm not telling the district court. I'm telling the district court whether or not in terms of that. In other words, if you didn't emphasize it, you'll think you didn't bring it, you didn't punctuate it. I'm just trying to understand, you just put it in there and didn't further it. Is that right? I raised it to my recollection at the hearing itself. I didn't press very, very hard because we were working on the other issues about, you know, the post-defense rehabilitation. And, you know, as the sentencing hearing progressed, obviously, at some point it became clear we were losing ground on that argument. But I do think it's an argument, a non-frivolous argument that wasn't fully addressed, even if it might have been mentioned in the terms of other needs for other sentencing purposes. I hope that answered the question. I'm sensing it might not have. If there are no other questions from the bench, I appreciate everyone's time. I do appreciate the effort you put into the reading, and thank you very much. We look forward to a decision. Thank you, counsel. I note, Mr. Hurst, you also caught up on it. We appreciate that on behalf of the court for lawyers like yourself to take these cases to help us with these, it's going to sound very thorny issues, and we appreciate it very much. Because they were obviously, note your able representation in the United States as well. Counsel, instead of coming down to greet you, handshakes, we'll have to say we appreciate it so much. Thank you for your argument and being here, and wish you well, and be safe, and stay well. Thank you so much. With that, I'll ask the clerk to adjourn the court, I guess until this afternoon, or recess, I should say. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Roger L. Gregory, Henry F. Floyd, A. Marvin Quattlebaum Jr.